UNITED STATES DISTRICT COURT<br>
MIDDLE DISTRICT OF FLORIDA<br>
ORLANDO DIVISION

**JOHN F. LEATH,**

       **Plaintiff,**

**-vs-**             **Case No.  6:06-cv-896-Orl-19DAB**

**ROBERT E. HANSELL,**
**In his official capacity as Osceola**
**County Sheriff,**

       **Defendant,**

_____

# ORDER

   This case comes before the Court on the following:

1.  Dispositive Motion of Defendant for Summary Judgment and Incorporated Memorandum of Law (Doc. No. 34, filed Nov. 1, 2007);

2.  Amended Notice by Plaintiff of Filing Deposition Transcripts in Support of Memorandum of Law in Opposition to Motion of Defendant for Summary Judgment (Doc. No. 37, filed Dec. 3, 2007); and

3.  Memorandum of Plaintiff in Opposition to Dispositive Motion of Defendant for Summary Judgment (Doc. No. 38, filed Dec. 3, 2007).

**Background**

   Plaintiff John F. Leath filed this action against Defendant Osceola County Sheriff Robert Hansell,[1] alleging that Defendant violated 42 U.S.C. sections 1981 and 1983 by firing him on the basis of his race.  Defendant now moves for summary judgment.

_____

    [1]   At the time Plaintiff was terminated, the Osceola County Sheriff was Charles Aycock. Robert Hansell took office in January of 2005.

Plaintiff is an African-American male who served for fourteen years as a sheriff's deputy in the Osceola County Sheriff's Office. (Doc. No. 9, filed Oct. 24, 2006, at ¶¶ 2, 10.) Throughout this period, Plaintiff worked as a corrections officer, school resource officer, court services officer, and finally as a road patrol deputy. (Doc. No.  34-7 at 16.) Plaintiff states that he generally received satisfactory performance evaluations in these roles. (*Id.* at 147.) Nevertheless, other evidence demonstrates that Plaintiff's employment record was not entirely positive. Plaintiff received an eight-hour suspension on October 24, 2001, for failing to properly notify a dispatcher that he transported a juvenile to her home instead of directly to school. (*Id.* at 24-25.) He also received a reprimand in April of 2002 for tardiness. (*Id.* at 27.) Furthermore, Sergeant Brian Adams, Plaintiff's supervisor, kept notes that detailed some of Plaintiff's shortcomings. Between September 10, 2001, and June 6, 2002, Adams noted fifteen incidents where Plaintiff arrived late for a meeting, took too long to respond to a call, failed to respond properly on the radio, or turned in incomplete paperwork. (Doc. No. 34-4 at 5-14.)[2]  In response, Plaintiff contends that performance problems were not uncommon among deputies and that even Adams had seriously violated the rules on one occasion by accidently shooting himself in the hand at the firing range. (Doc. No. 34-7 at 148.)

Plaintiff's role as a Sheriff's Deputy was not limited to typical police duties. As a way to earn extra money, Plaintiff frequently worked "off-duty details" for private organizations. (Doc. No. 34-3 at 11.) These off-duty details usually involved providing law enforcement protection during events such as conventions, and a Sheriff's Office employee named Candyce Collins coordinated staffing for the details. (*Id.* at 10.) Collins generally liked Plaintiff because he was willing to work

---

[2]         Adams also noted that Plaintiff reported marital problems and difficulties with his children's health throughout this period. (Doc. No. 34-4 at 5-14.)

last minute assignments.  (Doc. No. 34 at 4.)  However, she was also aware that Plaintiff had missed

details before and been late to others.  (Doc. No. 34-3 at 11.)

On April 9, 2002, Plaintiff was scheduled for an off-duty detail at a convention in Orlando.

(*Id.*)  He showed up at the convention several hours late.  (*Id.*)  Plaintiff states that he had called

Collins the day before the convention to tell her that he would be unable to work his detail due to

a court date later in the day.  (Doc. No. 34-7 at 41-42.)  However, when Plaintiff failed to show up

to the convention on time, Collins was surprised and had to find to find a last minute replacement.

(Doc. No. 34-3 at 2.)  Later that day, Plaintiff explained to Collins that he missed the detail because

of a court date.  (*Id.*)  He referred to his phone call the day before.  (*Id.*)  Collins responded that she

did not remember Plaintiff previously telling her about the court date.  (*Id.*).  About one week later,

Collins reported Plaintiff's absence to Bureau Chief Jerry Geier.  (*Id.* at 14.)   She also relayed her

opinion that Plaintiff was dishonest when he explained his reasons for not attending the off-duty

detail.  (*Id.*)

Upon learning of Collins's accusation, Geier ordered Sergeant Brian Adams to conduct an

internal investigation regarding several inconsistencies in the statements Plaintiff made to Collins.

(*Id.* at 6.)  As part of the investigation, Adams interviewed Plaintiff three times.  (Doc. No. 34-4 at

2.)  Adams concluded that Plaintiff had been untruthful in his initial statements to Collins and also

lied during the interviews.  (Doc. No. 34-5 at 12.)  Among the inconsistencies Adams noted was

Plaintiff's claim that it took him two hours to drive from the Sheriff's Office to the convention in

Orlando, a delay which Plaintiff attributed to traffic and a long line at Dunkin' Donuts.  (*Id.* at 7-8.)

Adams also found it noteworthy that Plaintiff decided to show up to the convention, since Plaintiff

insisted all along that he had asked Collins the day before the convention to take him off the detail.

(*Id.* at 10.)  Geier agreed with Adams's assessment and recommended that Plaintiff be terminated for violating a Sheriff's Office policy against dishonesty.  (Doc. No. 34-3 at 6.)

Under Florida law, Osceola County sheriff's deputies have the right to appeal a termination decision to a Career Service Appeals Board comprised of fellow officers. 1989 Fla. Laws 398, § 3. In turn, the Board's decision is reviewable by the Circuit Court.  Fla. R. App. P. 9.030(c)(3).  Once Plaintiff received notice of his termination, he appealed to the Career Service Appeals Board.  (Doc. No. 34-7 at 112.)  The Board assembled to hear Plaintiff's appeal was comprised of five officers. (*Id.*)  By law, Plaintiff was permitted to place two representatives on the Board, and he picked two African-American police officers from Kissimmee.  (*Id.*)  The Sheriff was also allotted two representatives, and he choose a white Sergeant and an African-American Lieutenant from the Sheriff's office.  (*Id.* at 112-13.)  The Board was then required to select its fifth member, and it choose a white sheriff's deputy over the objection of Plaintiff.  (*Id.* at 114.)  On August 16, 2002, the Board voted 3-2 to uphold Plaintiff's termination, with Plaintiff's two representatives dissenting. (Doc. No. 34-3 at 29.)  Plaintiff did not appeal the Board's decision.

The Sheriff Office's records reveal that ten other employees were terminated between 1998 and 2005 for violating the Office's policy against dishonesty.  (Doc. No. 38-5 at 4.)  Of these ten employees, seven were described as "White" and three were "Hispanic."[3]  (*Id.*)  Plaintiff was the only "Black" employee terminated under the rule.  (*Id.*)

The Sheriff's Office fired two of the employees, Chad Lakey and Edgar Oleson, shortly after Plaintiff was terminated.  (*Id.*)  According to an internal investigation, Lakey and Olsen violated the policy against dishonesty by failing to disclose that they possessed a radar gun.  (Doc. No. 38-6;

---

[3]      One of the employees, Jorge Martos, is listed as being terminated twice in June 2002. It is unclear whether this is a typographical error.  (Doc. No. 38-5 at 4.)

Doc. No. 38-7.)  The Career Services Board upheld Lakey's termination, and he appealed the decision to the Circuit Court for the Ninth Judicial Circuit in Osceola County.  (Doc. No. 34-2.)  In September of 2004, the Circuit Court issued an opinion "quashing" the Career Services Board's decision because it was "not based on competent, substantial evidence."  (*Id.*)  The effect of the court's decision was apparently to remand the case to the Board for further proceedings.[4]  The record does not reveal whether Olsen appealed his termination.

In January of 2005, Robert Hansell replaced Charles Aycock as Osceola County Sheriff. Several months later, Lakey, Olsen, and Plaintiff all applied to be rehired as sheriff's deputies. Lakey and Olsen, both of whom are white, were rehired.[5]  (Doc. No. 38-8; Doc. No. 38-9.)  Plaintiff was not.  (Doc. No. 37-2, filed Dec. 3, 2007, at 58.)  Because the Career Service Board lacks jurisdiction to review hiring decisions, Plaintiff could not appeal this hiring decision.  *See* 1989 Fla. Laws 398, § 3.

Plaintiff filed this lawsuit on June 30, 2006.  Plaintiff's Amended Complaint alleges one count of racial discrimination in violation of 42 U.S.C. sections 1981 and 1983.[6]  (Doc. No. 9 at ¶¶6-27.)  Plaintiff contends that he was subjected to disparate treatment on the basis of his race when Sheriff Aycock's administration terminated him in 2002.  (*Id.* at ¶¶ 13, 20-21.)  Defendant filed a

---

[4]     The Sheriff Office's records indicate that Lakey was eventually "rehired."  At least one other employee is designated as being directly "reinstated" per a court order.  (Doc. No. 38-5 at 4.)

[5]     The record is unclear whether Lakey was rehired because the Career Service Board's decision was overturned for lack of evidence or whether the Sheriff decided to rehire Lakey for other reasons.  (*See* Doc. No. 37-2 at 57-58.)

[6]     The Amended Complaint originally contained a second count alleging a violation of Plaintiff's "liberty interests" under the Federal Constitution.  However, this count was voluntarily dismissed.  (Doc. No. 15, filed Nov. 20, 2006.)

motion for summary judgment on November 1, 2007, arguing that Plaintiff has failed to establish a prima facie case of racial discrimination, cannot offer any evidence to rebut to his legitimate, non-discriminatory reason for the termination, and has failed to make the requisite showing of a pattern of discrimination or final policy-making authority necessary to establish liability under section 1983. (Doc. No. 34 at 2.) Plaintiff filed a responsive memorandum, contending that all elements of his prima facie case are met, that genuine issues of material fact exist regarding Defendant's legitimate, non-discriminatory reason for the termination, and that the prerequisites for liability under section 1983 are satisfied. (Doc. No. 38 at 10-20.)

## Standard of Review

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied

its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

### Analysis

Plaintiff brings his claims against Sheriff Hansell under 42 U.S.C. sections 1981 and 1983.[7] Suits against a government officer in the officer's official capacity are tantamount to a suit against the government entity that the officer represents. *Cook ex. rel Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1115 (11th Cir. 2005); *Caruthers v. McCawley*, No. 8:07-cv-134-T-30TBM, 2007 WL 4326785, at * 3 (M.D. Fla. Dec. 7, 2007). Thus, when a plaintiff sues a municipal officer under section 1983, the plaintiff must establish that the "municipality *itself* cause[d] the constitutional violation at issue." *Cook*, 402 F.3d at 1115 (emphasis in original); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). To do so, the plaintiff must demonstrate that the constitutional violation was the result of an official "custom or policy." *Caruthers*, 2007 WL 4326785 at * 3 (citing *Monell*, 436 U.S. at 693-94).

---

[7]     Section 1983 provides the exclusive federal damages remedy for the violation of rights guaranteed by section 1981 when the claim is pressed against a state actor. *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 734 (1989).

Defendant argues that Plaintiff's claim for his termination must be dismissed because it does not meet the threshold requirements of establishing that Plaintiff's injury was the result of an official "custom or policy." (Doc. No. 34 at 19.) The Supreme Court has permitted five methods of establishing the existence of a "custom or policy" sufficient to impose municipal liability under section 1983.[8] Plaintiff contends that two of these methods apply here. (Doc. No. 38 at 17-20.) First, Plaintiff argues that the Sheriff possessed final policymaking authority. Second, Plaintiff argues that his termination was pursuant to a custom of eliminating African-American deputies from the Sheriff's Office.

## A.      Final Policymaking Authority

Under section 1983, a municipality may only be held liable for the execution of an official government policy or custom promulgated by someone with final policymaking authority. *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1312 (11th Cir. 2006). The issue of whether an official possessed final policymaking authority is legal question that must be answered according state law, local ordinances, and "custom and usage having the force of law." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotation marks and citations omitted).

In many cases, the actual decision-maker differs from the "final policymaker" because "final policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." *Quinn v. Monroe County*, 330 F.3d 1320, 1326 (11th Cir. 2003). Courts have often applied this general principal to cases where municipal employees are fired, finding that municipal officers do not possess final policymaking

---

[8]      Erwin Chermerinsky, Federal Jurisdiction § 8.5 (4th ed. 2003). These methods include: (1) actions of municipal legislative bodies; (2) agencies exercising delegated authority; (3) individuals with final decision-making authority; (4) policies of inadequate training or supervision; and (5) custom. *Id.*

authority with respect to employment decisions which are reviewed by a career service council.  *Id.*; *Scala v. City of Winter Park*, 116 F.3d 1396, 1402 (11th Cir. 1997); *Maschmeier v. Scott*, 508 F. Supp. 2d 1180, 1183 (M.D. Fla. 2007).  Exceptions to this rule apply where the board's decision was a "rubber stamp," where "cognizable defect[s]" exist in the proceedings, or where the board itself ratified the "unconstitutional basis of the termination decision." *Quinn*, 330 F.3d at 1326; *Scott*, 508 F. Supp. 2d at 1183 (concluding that the Eleventh Circuit would likely recognize an exception to the final policymaker rule where further review amounted to a mere "rubber stamp").

Similar to this case, the plaintiff in *Maschemeier v. Scott* was a Florida sheriff's deputy who brought a claim against the sheriff under section 1983 for an unlawful termination.  *Scott*, 508 F. Supp. 2d at 1182.  The sheriff had terminated the deputy for giving public support to the sheriff's political opponent during an election.  (*Id.*)  The court granted summary judgment in favor of the sheriff because the deputy failed to demonstrate that the sheriff was the final policymaker with respect to employment decisions.  *Id.* at 1183.  The evidence established that the sheriff's decisions were subject to review by a career service board.  *Id.*  Moreover, the plaintiff could not offer any evidence to support his allegation that the board had never overturned the sheriff's decisions, he did not allege that the board ratified the sheriff's unconstitutional basis for the termination, and he could not point to any defects in the Board's review.  *Id.* at 1183-84.

The facts of this case fall squarely in line with *Scott*.  Plaintiff does not dispute that the Sheriff's termination decisions are reviewed by the Career Service Board, and he cannot demonstrate that any of the exceptions recognized by the case law apply. (Doc. No. 38 at 18.)  First, Plaintiff does not offer any evidence that the Board's decision was a "rubber stamp"other than the fact that Board upheld the terminations of Plaintiff, Lakey, and Olsen.  (*Id.* at 19.)  This evidence

might establish that the Board is a "rubber stamp" if the terminations of these three employees were the only cases the Board has ever reviewed. But Plaintiff fails to provide a denominator to the equation, and the Court therefore cannot determine how frequently the Board upholds the Sheriff's decisions. In addition, the Sheriff Office's records indicate the Board has overturned at least one termination between 1998 and 2005. (Doc. No. 38-5 at 4.)

Secondly, Plaintiff does not argue that the Board ratified the Sheriff's alleged discriminatory intent. Nor is there any basis to conclude that a board which is three-fifths comprised of African-American officers would rule against Plaintiff on the basis of his race.[9] Finally, Plaintiff has not demonstrated that any cognizable defects existed in the proceedings. Plaintiff points out that the Board chose a white officer as its fifth member despite his objection. However, he does not argue that it did so due to racial bias, and he fails to explain why he should have been permitted to appoint the fifth member. To the contrary, the law requires, apparently for the purpose of ensuring neutrality, that the board be composed of two representatives for the appellant, two representatives for the sheriff, and a fifth board-appointed member.[10]

The only meaningful way in which this case differs from *Scott* is the fact that Plaintiff applied to be rehired. Sheriff Hansell refused to rehire Plaintiff, and the record establishes that

---

[9]    *See United States v. Crosby*, 59 F.3d 1133, 1135 n.4 (11th Cir. 1995) (Reasoning that where a decision-maker is of the same race as the adversely affected party, the plaintiff should present evidence that the decision-maker "held members of his own race to a higher standard of conduct than members of another race"); *Robinson v. UPS*, No. 1:06-CV-2601-RLV, 2007 WL 3484743, at *5 (N.D. Ga. Nov. 14, 2007) ("When the decision-maker is in the same class as the plaintiff, it is very difficult to show a discriminatory motive.").

[10]    Plaintiff also distinguishes *Scott* because it involved a termination that allegedly violated the employee's rights of association and free speech. (Doc. No. 38 at 19.) Plaintiff does not explain how this distinction bears on the issue of municipal liability under section 1983. In both *Scott* and this case, the sheriffs' decisions were reviewed by career service boards.

-10-

Hansell's decision was not subject to review by the Career Service Board. (Doc. No. 37-2 at 58.) Nevertheless, to the extent this fact establishes final policymaking authority, it does so with respect to the wrong decision. The Amended Complaint alleges that Sheriff Hansell is liable in his official capacity for Sheriff Aycock's decision to terminate Plaintiff. The Amended Complaint does not allege a separate cause of action based on Sheriff Hansell's refusal to rehire Plaintiff.[11] Thus, at issue is Sheriff Aycock's decision to terminate Plaintiff, not Sheriff Hansell's refusal to rehire Plaintiff. The fact that Sheriff Hansell may have had final policymaking authority for hiring decisions does not bear on whether Sheriff Aycock had final policymaking authority for termination decisions.[12]

As a result, the decision to terminate Plaintiff was not made by an official with final policymaking authority.

---

[11]     Nor can the Amended Complaint be read to imply such a cause of action. The only discussion in the Amended Complaint regarding Sheriff Hansell's refusal to rehire Plaintiff is an allegation that Sheriff Hansell became liable as a successor in interest because he ratified Sheriff Aycock's unlawful discrimination by not rehiring Plaintiff. (Doc. No. 9 at ¶ 9.) The Amended Complaint does not allege that Sheriff Hansell retaliated against Plaintiff or that his decision to not rehire Plaintiff was racially motivated. (*See id.*) Although Plaintiff later attempted to add a retaliation count, the Court denied the proposed amendment because it came seven months after the deadline for amendments to pleadings had passed and one month after Plaintiff had been served with the discovery material on which it was based. (Doc. No. 33.)

[12]     It is well established that final policymaking authority in one sphere of decision making does not automatically establish final policymaking authority in another. *See, e.g.*, *Carrasquillo v. Rodriguez*, 281 F. Supp. 2d 329, 336 (D.P.R. 2003) ("Municipal liability attaches . . . where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered."). Plaintiff's contention that the Sheriff's authority to make hiring decisions vests him with such authority in termination decisions would render the entire "final policymaking authority" inquiry meaningless. Nearly every bureaucrat at every level of government possesses some final authority with respect to a portion of his or her job responsibilities. Plaintiff's reasoning would transform every one of these government officers into "final policymakers" with respect to any decision made in the course of their employment.

B.      **Custom**

To establish municipal liability on the basis of a custom, the plaintiff must demonstrate that the municipality "engaged in conduct causing the deprivation of rights at issue by policies which would affirmatively command that it occur, or by acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity." *Underwood v. City of Ft. Myers*, 890 F. Supp. 1018, 1023 (M.D. Fla. 1995) (citing *Jett*, 491 U.S. at 737).  In the context of employment discrimination, the plaintiff must demonstrate that the municipality had a custom or practice of discrimination "so well-settled and pervasive that it assumes the force of law." *Moghadam v. Morris*, 87 F. Supp. 2d 1255, 1264 (N.D. Fla. 2000) (citing *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997)).  To establish a practice of discrimination through evidence of "disparate impact" on employees of a particular race, plaintiffs must present "strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally."  *See id.* (discussing the burden to demonstrate a custom of employment discrimination under section 1983); *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1287 (11th Cir. 2000) (discussing the burden to demonstrate a "disparate impact" in Title VII litigation against private employers).

Plaintiff attempts to meet this burden by presenting two pieces of evidence.  (Doc. No. 38 at 17.) Plaintiff begins by pointing to Sheriff Hansell's acknowledgment, during his deposition, that of approximately 200-250 sworn deputies, only three African Americans were at the rank of Sergeant or higher.  This statistic is meaningless.  Sheriff Hansell preceded the statement with a warning that he lacked exact numbers and had to "guess."  (Doc. No. 37-2 at 9-10.)  His guess cannot be characterized as "reliable" statistical information.  *See Watson v. Fort Worth Bank and*

*Trust*, 487 U.S. 977, 996 (1988) (discussing methods of impeaching statistical evidence of disparate impact). More importantly, Plaintiff fails to explain how many deputies, of any race, are at the rank of Sergeant or higher. Thus, Plaintiff failed to carry his burden of proof. With only half of the picture, there is no way to determine whether a racial imbalance existed in the Sheriff's administration.

Plaintiff next argues that Sheriff Hansell's decision not to rehire Plaintiff, compared with his decision to rehire Lakey and Olsen, demonstrates a custom of eliminating African Americans from the Sheriff's Office. (Doc. No. 38 at 19.) Plaintiff's anecdote is of minimal evidentiary value because it elucidates only one incident of alleged discrimination. A custom, by definition, contemplates more than one occurrence of a particular act.[13] *See Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994) ("Normally random acts or isolated incidents are insufficient to establish a custom or policy."). On the whole, Plaintiff's evidence provides no basis for a reasonable fact finder to determine that a custom of unlawfully terminating deputies on the basis of their race existed in the Osceola Sheriff's Office. Defendant is entitled to judgment as a matter of law on this issue.

Accordingly, Plaintiff cannot establish municipality liability under section 1983 for any claims relating to his termination.

---

[13]     Additionally, the record provides little support for Plaintiff's argument that Sheriff Hansell's decision not rehire Plaintiff was motivated by racism. Plaintiff fails to present evidence that he was on equal footing with Lakey and Olsen. Plaintiff's employment record contained several negative incidents aside from his termination, and Plaintiff does not present evidence establishing that Lakey and Olsen had a similar record. Moreover, Lakey's termination was overturned by the Circuit Court because it was not based on substantial evidence. (*See* Doc. No. 34-2 at 8.)

**Conclusion**

Based on the foregoing, the Dispositive Motion of Defendant for Summary Judgment and Incorporated Memorandum of Law is **GRANTED** (Doc No. 34, filed Nov. 1, 2007). Judgment shall be entered for the Defendant, and the Clerk of the Court is directed to close the file.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January _14__, 2008.

```
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT
```

Copies furnished to:

Counsel of Record